UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-CV-177-KSF

FREDDY S. CAMPBELL                                                    PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

CREDIT BUREAU SYSTEMS, INC.,  ET AL.                          DEFENDANTS


The Court considers numerous pending motions and responses filed by the parties.  The

Court has organized the pleadings into six categories.

**I.**
Defendant Credit Bureau Systems, Inc.,'s
"Motion to Dismiss"

(1)     The "Motion to Dismiss and/or Summary Judgment" filed by counsel for

Defendant Credit Bureau Systems,  Inc. ("CBSI") [Record No. 26];

(2)     The "Response" filed by *pro se* Plaintiff Freddy S. Campbell ("Campbell")

[Record No. 27] to CBSI's motion;

(3)     The "Reply" [Record Nos. 31and 32] filed by counsel for CBSI to Campbell's

"Response" to CBSI's motion;[1]

**II.**
Plaintiff Freddy S. Campbell's **First**
"Motion for Summary Judgment" [Record No. 28]

(1)     The **First** "Motion for Summary Judgment" [Record No. 28] filed by Campbell;

(2)     The "Response [Record No. 32] filed by counsel for CBSI to Campbell's First

---

[1]

Record No. 31 and Record No. 32 appear to be exact duplicates of each other.

"Motion for Summary Judgment."

### III.
### Campbell's **Second** "Motion for Summary Judgment" [Record No. 39]

(1)     The **Second** "Motion for Summary Judgment" [Record No. 39] filed by Campbell;

(2)      The "Response" [Record No. 42] to Campbell's **Second** "Motion for Summary Judgment" filed by counsel for Defendant GLA Collections Company, Inc. ("GLA Collections");

(3)     The "Reply" [Record No. 43] filed by Campbell to GLA Collections' "Response to Campbell's Second "Motion for Summary Judgment."

### IV.
### Defendant GLA Collections' "Motion to Dismiss"

(1)     The "Motion to Dismiss" filed by counsel for Defendant GLA Collections [Record No. 41];[2] and

(2)     Campbell's "Response" [Record No. 44] to Defendant GLA Collections' "Motion for Summary Judgment."

### V.
### Campbell's "Motion for Default Judgment"

(1)     The "Motion for Default Judgment Against Defendant GLA Collections" filed by Campbell [Record No. 45]; and

(2)     The "Response" [Record No. 46] filed by counsel for GLA Collections to

---

[2]

The Clerk's docket notation of September 2, 2008 states that Record Nos. 41 and 42, filed by counsel for GLA Collections, operate dually as a "Motion for Summary Judgment" on GLA Collections' behalf <u>and</u> as a "Response" to Campbell's **Second** "Motion for Summary Judgment"[Record No. 39].

Campbell's "Motion for Default Judgment."

**VI**.
<u>Campbell's Claims Against Defendant "Professional Collections"</u>

(1)     The "Return of Service "Unexecuted" [Record No. 11

(2)     The Order entered On June 17, 2008 [Record No. 22, pp. 2-3]

(3)     The "Return of Service Unexecuted," [Record No. 40].

<u>PROCEDURAL HISTORY</u>
1. <u>The Complaint</u>

Plaintiff Freddy S. Campbell is confined in the Federal Medical Center-Lexington ("FMC-Lexington") which is located in Lexington, Kentucky. On April 11, 2008, Campbell filed the instant *pro se* civil complaint in which he asserted claims, against three defendants, under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq* ("FDCPA").[3]

Campbell named the following defendants :(1)  CBSI; (2) GLA Collections, and (3) an entity identified as "Professional Collections," from Charleston, West Virginia. Campbell alleged that the defendants either failed and/or refused to comply with "cease and desist" letters which he sent each of them on February 19, 2008 [*See* Record Nos. 5-2, pp. 1-3].  He alleges that they also failed to comply with other aspects of the FDCPA.

In Campbell's Complaint and Amended Complaint, he seeks damages against the defendants, jointly and severally, for alleged violations of §1692g(a)(4) of the FDCPA

---

[3]

Plaintiff Campbell was twice allowed to amend his complaint and attach additional documentation in support of his claim [*See* Orders entered on April 30, 3008 (Record No. 7) and June 5, 2008 (Record No. 17)].

3

[Complaint, Record No.2, ¶ 1]. On February 19, 2008, Campbell sent letters to the three defendants in which he disputed the underlying debts; requested debt validation; and asked for the names and addresses of the original creditors.  Campbell alleges that the defendants were required to respond to him within 35 days of his letters; cease the collection process and inform him that he had 30 days to decide whether to contest the claim [Record No.2, ¶ 8].

### A. Claims Against Defendant CBSI

On February 19, 2008, Campbell sent a "cease and assist" letter to CBSI, disputing the validity of the debts which it was engaged to collect [*See* Record No. 2*, ¶* 10]. In addition to disputing the validity of the debt, Campbell requested "validation of this debt." Campbell alleges that on April 3, 2008, he received a statement from CBSI informing him that he owed Kings Daughters Diagnostic the sum of $1,318.24. [*Id*, ¶ 16].

Campbell claims that CBSI's response came too late. Campbell claims that CBSI was required under the FDCPA "to communicate with the plaintiff/debtors official notice within 35 days and to inform the debtor that he had 30 days to decide whether to contest claim, and also to cease the collection process." [*Id*.,  ¶ 8]. Additionally, Campbell claims that CBSI was "required under section 1692g(a) … to cease collection activities, of the disputed debts; provide a validation notice, with the names and addresses of creditors." [*Id*., ¶ 9].

### B. Claims Against Defendant GLA Collections

On February 19, 2008, Campbell sent a "cease and assist" letter to GLA Collections in which he disputed the underlying debt and requested validation of same. Additionally, he demanded to be provided with the name and address of the original creditor.

4

Campbell alleges that on or around March 3, 2008, he received a reminder notice from GLA Collections attempting to collect the sum of $225.59 for Kings Daughters Medical Center. [Complaint, ¶ 14]. Thereafter, Plaintiff claims he received an account itemization from GLA Collections on or about March 21 or 22, 2008, on the debts owed to King's Daughter Medical Center for the sums of $140.04 and also $126.04 [*Id.*, ¶ 15].

Campbell contends that GLA Collections violated his rights under the FDCPA in three ways.  First, he contends that GLA Collections violated his rights by not informing him that he had 30 days to dispute the validity of all portions of the debt as is required by the FDCPA [*Id.*, ¶ 21]. Second, Campbell contends that GLA Collections violated his rights under § 1692g(a)(4) of the FDCPA by not ceasing collection activities after receiving a "cease and desist" letter from him [*Id.*, ¶ 22]. Third, Campbell argues that GLA Collections violated his rights by not providing him  with proof/signature of the debts [*Id.*, ¶ 24].

### C. Claims Against Defendant Professional Collections

Campbell asserts FDCPA claims against this defendant which are similar to the claims asserted against the other two defendants. The United States Marshal's ("USM") Service has been unable to serve Defendant Professional Collections [*See* Returns of Service "Unexecuted," Record No. 11 and Record No. 40]. It appears that Campbell has been unable to provide the USM with an adequate address for effectuating service of process on this defendant.

### 2. Motion to Dismiss/ Summary Judgment filed by Defendant CBSI

In its "Motion to Dismiss, and/or Summary Judgment" [Record No. 26], Defendant CBSI sets forth several arguments why Campbell's claims against it should be dismissed or that

summary judgment should be entered in its favor. Defendant CBSI subsequently filed a "Reply"[Record No. 32] to Campbell's "Response" to its motion. In CBSI's "Reply," it asserted an additional reason why Campbell's claims should be dismissed. The Court will collectively list CBSI's legal arguments.

First, CBSI argues that it had no legal obligation to provide Campbell with "validation" of his debt in response to his February 19, 2008, letter. CBSI explains that the FDCPA establishes the statutory scheme whereby the debt collector is required to provide a written notice, known as the "validation notice," to the consumer within five (5) days of its initial communication with the consumer, in connection with the collection of a debt. CBSI cites the relevant portion of the statute, 15 U.S.C. § 1692g (a)(3), which provides in part as follows:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

On that issue, CBSI has presented the Court with the sworn affidavit of Sheila Renfro, Director of Operations of CBSI [Record No. 26- 3]. Renfro provided her qualifications to offer an affidavit on CBSI's behalf, and acknowledged that CBSI is a collection agency [*Id*., ¶ 1-6]. Ms. Renfro stated that CBSI's initial communication with Mr. Campbell with respect to the alleged debt was on **January 12, 2006** [*Id*., ¶ 7]. Renfro stated that "the correspondence sent to Mr. Campbell on January 12, 2006, was a standard letter which provided Mr. Campbell with the validation notice required under 15 U.S.C. § 1692."[*Id*. ¶ 8].

6

Renfro further explained that "According to the books and records of CBSI, which said records are maintained in the ordinary course of business, CBSI received a letter from Mr. Campbell dated February 19, 2008, disputing the validity of the debt and requesting validity of the debt." [*Id*, ¶ 9]. Renfro did not, however, provide the address to which CBSI mailed the January 12, 2006, correspondence to Campbell.  In her affidavit, Ms. Renfro did not state if the January 12, 2006 was returned by the postal service as "undeliverable" for any reason.

CBSI argues that Campbell had until approximately February 11, 2006, to request validation, but that he did not request validation until over two years later, on February 19, 2008. CBSI contends that because Campbell did not request validation within thirty (30) days of January 12, 2006, CBSI had no legal obligation to provide additional "validation."

Second, CBSI argues that notwithstanding the fact that Campbell failed to respond to its initial communication of January 12, 2006, it promptly provided Campbell, on April 3, 2008, with a  copy of the alleged bill, as a courtesy. CBSI argues that although Campbell now refers to his February 19, 2008, letter as a "cease and assist" letter, the letter plainly requested that CBSI provide validation of the debt.

CBSI argues that even if it had a duty to provide validation in February of 2008 (which it denies), it more than complied with the validation requirement of section 1692(g)(b) by providing Campbell with the copy of the purported bill on April 3, 2008. CBSI further contends that it was under no legal obligation to provide any other "proof/signature of the debts."

Third, CBSI argues in its subsequently filed "Reply" that Campbell lacks standing to state a claim under another statute which he appeared to be invoking, Title 15 U.S.C. § 1681s-

2(d), the Fair Credit Reporting Act ("the FCRA").  Defendant CBSI argues that 15 U.S.C. § 1681s-2(a) requires persons who furnish credit information to provide consumer reporting agencies with accurate information. CBSI states that subsections (c) and (d), in turn, limit the remedies available for violations of subsection (a).

CBSI contends that Campbell cannot bring a private right of action under the FCRA, and cites the following language from *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 782 (W.D. Ky. 2003): "More precisely, subsection (c) eliminates the availability of direct remedies to consumers by making §§ 15 U.S.C. 1681n and 1681o – the FCRA's broad provisions creating civil liability for willful and negligent noncompliance respectively – inapplicable to violations of subsection (a)."

CBSI argues that § 1681s-2(d) vests only federal and state authorities with standing to enforce compliance with § 1681.[4] CBSI cites numerous decisions in support of its argument that a private individual has no standing to bring a private right of action for alleged violations of the FCRA [*See* citations, CBSI Reply, Record No. 32, p.3]. Finally, CBSI alleges that Campbell has brought the instant civil action in bad faith and for the purpose of harassment.  CBSI seeks an award of attorney's fees incurred in defending this action.

---

[4]

CBSI cites 15 U.S.C. § 1681s-2(d), which states that:

"[s]ubsection (a) of this section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section."

*Id*.

### 3. Campbell's Joint "Motion for Summary Judgment" and "Response" to CBSI's Motion to Dismiss

On July 8, 2008, Campbell filed a response to CBSI's motion, and a separate document entitled "Declaration" [*See* Response, Record No. 27; and "Declaration," Record No. 29]. Summarized, Campbell contends that the Court should disregard the January 12, 2006, initial communication from CBSI and afford it no effect. Campbell explains that he was in custody at that time, and that on that specific date, he was being transferred from the Carter County Detention Center to the Federal Detention Center in Oklahoma.

Campbell argues that because he was in custodial transit on that date, he did not receive CBSI's letter and was unaware that CBSI had contacted him. Therefore, he argues that absent his receipt and knowledge of CBSI's January 12, 2006 letter, notifying him of the debt, that letter should not be considered as the "validation notice" under 15 U.S.C. § 1692(a)(3).

Campbell states that prior to his transfer to the federal facility in Oklahoma, he received a bill from Kings Daughters Medical Center. Campbell states that he wrote Kings Daughters Medical Center a letter advising that he was a pre-trial detainee and that all future billings should be directed to "John Parrine, Supervising Marshal, United States Marshal Office,"in the United States Courthouse located in Charleston, West Virginia.

Campbell claims Kings Daughters Medical Center negligently disregarded his directive to forward any communications regarding his debt to Mr. Parrine and wrongfully provided negative credit information about him to CBSI, in violation of the Fair Credit Reporting Act. Campbell further claims that CBSI wrongfully relied on the erroneous information which Kings Daughters Medical Center had negligently provided to it and thereby violated the provisions of

9

15 U.S.C. § 1681e.

Campbell contends that his letter of February 19, 2008 instead operated as a *de facto* "validation" notice which required CBSI to have responded to his letter within thirty days of delivery and to have supplied him with the information he demanded in his letter. He strenuously denies that he has pursued his claims in bad faith. He states that he would not have paid the $350.00 filing fee to pursue a frivolous claim.

### 4. CBSI's "Reply" to Campbell's "Response" [Record No. 31]

In its "Reply" to Campbell's "Response," CBSI reiterated that Sheila Renfro's Affidavit establishes that CBSI sent Campbell the initial communication on January 12, 2006 and that the letter contained the "validation notice" required by 15 U.S.C. § 1692(a)(3). CBSI explained that it was only obligated to provide the "validation notice" within five (5) days of its initial communication, and that it complied with that statutory obligation by including the "validation notice" in its initial communication. CBSI again emphasized that Campbell's whereabouts, and/or actual receipt of the communication on January 12, 2006, are irrelevant.

CBSI further replies that to the extent that Campbell belatedly attempted to invoke a remedy under the FCRA in his "Response," Campbell should not be allowed to assert a claim under that statute. First, CBSI notes that Kings Daughters is not a party defendant in this action. Second, CBSI notes that Campbell did not assert a claim under the FCRA in either his original complaint [Record No. 2] or in his "Second Amended and Supplemental Pleadings" [Record No. 9]. Third, as discussed herein, CBSI argued that because the FCRA does not provide a private right of action for alleged violations of the FCRA, Campbell lacks standing to assert a claim

10

under the statute.

     5. <u>Campbell's Second Motion for Summary Judgment [Record No. 39]</u>

Plaintiff Campbell filed a second "Motion for Summary Judgment" on August 20, 2008 [Record No. 39].  In that motion, Campbell focused on the alleged violations of Defendant GLA Collections.

Campbell alleges that on February 19, 2008, he sent a "cease and desist letter" to Defendant GLA Collections in which he disputed two debts and demanded that GLA Collections stop all collection activity with respect to those debts. Campbell alleges that GLA Collections received his letter on February 25, 2008.

Campbell complains that GLA Collections violated the FDCPA by sending him a "reminder notice" on or about March 2 or 3, 2008. Campbell claims this contact was an attempt to collect a debt. Campbell further claims that the itemization which he received from GLA Collections on April 16, 2008 constituted an impermissible attempt to collect a debt. Finally, Campbell asserts that he obtained a Consumer Credit Report dated July 28, 2008, showing that Defendant GLA Collections is still attempting to collect a debt in violation of the FDCPA.

Campbell raises somewhat contradictory arguments in his second motion for summary judgment.  On one hand, Campbell complains that "GLA never contacted the Plaintiff with a written notice . . ."  On the other hand, Campbell then complained that "when the Plaintiff contacted them on February 25, 2008 disputing the debt . . .GLA never ceased collection of the debt until they obtained a verification of the debt or a copy of a judgment" [Record No. 39-2] .

6. "Motion to Dismiss/ Summary Judgment" filed by
Defendant GLA Collections [Record No. 41]

Defendant GLA Collections filed a joint "Motion to Dismiss" and a "Response" to Campbell's "Motion for Summary Judgment" [*See* Record Nos. 41 and 42]. GLA Collections contends that Campbell does not assert valid FDCPA claims. It argues that it complied, in all respects, with the provisions of 15 U.S.C.§ 1692g(a)(3), which requires a debt collector to provide a written notice, the "validation notice" to a consumer within five (5) days of its initial communication with the consumer when collecting a debt.  According to its representative, GLA Collections sent its "initial communication" to Campbell on **March 16, 2007**.

In support of its motion to dismiss, GLA Collections has attached the sworn affidavit of Janean Fritch, Assistant Collections Manager for GLA Collections in Louisville, Kentucky [Record No. 41-3].  Fritch provided her qualifications to offer an affidavit on GLA Collection's behalf, and acknowledged that in March of 2007, GLA Collections was engaged to collect amounts due from the plaintiff for services rendered to him by Kings Daughters [*Id*., ¶ 1-4]. Ms. Fritch stated that GLA Collections' initial communication with Mr. Campbell, with respect to the Kings Daughters' debt, was on March 16, 2007 [*Id*., ¶ 5].

Ms. Fritch stated that the March 16, 2007 letter contained the standard language required under 15 U.S.C. § 1692.[*Id*. ¶ 6]. Ms. Fritch did not provide the address to which GLA Collections mailed the March 16, 2007, correspondence to Campbell.  Ms. Fritch did not state if the March 16, 2007 letter was returned by the postal service as "undeliverable" for any reason.

Fritch states that GLA Collections subsequently received a letter from Campbell dated February 19, 2008, which disputed the validity of the debt and requesting validity of the debt.

12

[*Id*, ¶ 7]. Fritch notes that Campbell's request for validation was not made within thirty (30) days of GLA Collections' initial communication of March 16, 2007. She explains, however, that GLA Collections provided Campbell with "a copy of the bills along with other information in excess of what is required for validating a debt on or about March 19, 2008" [*Id.*, ¶ 8].

GLA Collections' legal arguments essentially mirror those asserted by co-defendant CBSI. First, GLA Collections contends that it had no legal obligation to provide "validation" of the debt in response to Campbell's letter of February 19, 2008. GLA Collections emphasizes that it had previously complied with its statutory duty to provide a "validation notice" by sending it in its initial communication to Campbell on March 16, 2007.

GLA Collections argues that under the FDCPA, Campbell had thirty (30) days from March 16, 2007 (until April 15, 2007) in which to dispute the debt and request validation, but that he did not do so until almost a year later, on February 19, 2008. GLA Collections notes that had Campbell made a timely request for validation, it would have been required to provide validation pursuant to 15 U.S.C. § 1692g (b).[5]

In its motion, GLA Collections stresses that its initial communication of March 16, 2007

---

[5]

GLA Collections explains that 15 U.S.C. § 1692g (b) governs the process where a debt is disputed within the thirty-day period, and provides as follows:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

was sent to Campbell's last known address. Citing *Mahon v. Credit Bureau of Placer County, Inc.*, 171 F. 3d 1197 (9th Cir. 1999), and the common mail-box rule, it argues that Campbell's *receipt* of the initial communication is irrelevant. GLA Collections contends that because Campbell failed to timely request validation of the debt within thirty-days, it had no obligation under 15 U.S.C. § 1692(g), to cease and desist collection efforts against Campbell.

Second, GLA Collections argues that it responded to Campbell's letter of February 19, 2008 and provided a copy of both Kings Daughters' bills to Campbell, despite not being required to provide the information.[6] GLA Collections argues that the information which it provided to Campbell at that time, as a purely voluntary and good faith measure, far exceeded its obligations under section 1692g(b) of the FDCPA.

Third, GLA Collections contends that Campbell's correspondence of February 19, 2008 did not request any "proof/signature" of the debts. GLA Collections argues that even if the letter had contained such a request, for the reasons set forth previously, it would not have been legally obligated to provide such information. Fourth, like co-defendant CBSI, GLA Collections asserts that Plaintiff Campbell should be ordered to pay its reasonable attorney's fees. GLA Collections contends that Campbell brought his claims in bad faith and for the purpose of harassment.

---

[6]

GLA Collections states that it provided Campbell with a copy of one of the original bills from the date of service of 9/12/05 in the sum of $99.55 and an itemization of the date of service of 9/27/05 in the sum of $126.40. According to GLA Collections, "Both documents show the original creditor to be King's Daughters Medical Center, the services rendered, the date services were rendered by this creditor and the amount still due for each date of service" [Record No. 41, p.8].

7. Campbell's Responses and Motions
[Record Nos. 43, 44, and 45]
and GLA Collections' Response [Record No. 46]

Campbell filed a "Reply" to GLA Collections' "Response." That filing also serves as a "Response" to GLA Collections' "Motion to Dismiss" [*See* Record Nos. 43 and 44]  Just as he argued in response to CBSI's motions, Campbell argued that he could not have received GLA Collections' March 16, 2007, "validation notice." He again explains that some fourteen months before, on January 12, 2006, he was being transferred from the Carter County Detention Center to a federal prison. Campbell argues as follows:

> "Therefore it would have been impossible to receive a notice from Defendant GLA. The notice would have been returned to Defendant GLA undeliverable and all subsequent letters. Their records would have reflected that the Plaintiff never received a notice. . . There is no doubt that any subsequent letters would have been returned undeliverable, which would raise a genuine dispute of fact to whether debt collector sent a validation of debt notice to this Plaintiff. "

[Record Nos. 43 and 44, p.2].

Campbell argues that the facts of his case are readily distinguishable from the *Mahon* case cited by GLA Collections. Campbell emphasizes that in *Mahon*, the debt collector sent a "validation notice" to a debtor's home address of forty-five (45) years. Campbell argues that in his case, however, GLA Collections allegedly sent its "validation notice" to him at his last known address, which he claims was the Carter County Detention Center. Campbell assigns great weight to the fact that GLA Collections sent its initial communication to " . . . a county jail and a federal holding facility which is clearly not the Plaintiff's address for any significant period of time" [*Id.*, p.3].

Campbell appears to question the veracity of GLA Collections by noting that when it filed

its Answer to the Complaint, and its "untimely" answer to the Second Amended Complaint, it failed to mention the delivery of the March 16, 2007 initial communication. Campbell reiterates that the "initial communication" vis-a-vis GLA Collections occurred when he (Campbell) sent his letter dated February 19, 2008. Campbell alleges that GLA Collections breached the terms of the FDCPA by failing to respond to his letter on February 25, 2008 and by not ceasing collection activities as required by the FDCPA.

Campbell disputes that he has pursued his claims against GLA Collections in bad faith, again noting that he paid the $350.00 filing fee in full. He claims that he would not have paid this amount to "harass someone," and that the defendants' actions have subjected him to emotional distress as a result of receiving an adverse credit rating.

Finally, in his "Motion for Default Judgment" [Record No. 45], Campbell vigorously contends that Defendant GLA Collections is in default. He claims that GLA Collections was required to have answered his "Second Amended Complaint" within twenty (20) days of having been served with same on June 5, 2008. He complains that GLA Collections waited until August 7, 2008 to file its Answer, which he claims was untimely.

Defendant GLA Collections responded to this motion by stating it had sixty days - - not twenty - - from the date of service of process in which to file an Answer to the "Second Amended Complaint" [See Response, Record No. 46]. Counsel for GLA Collections noted that pursuant to Fed. R. Civ. P. 12 (a)(1)(A) (ii), a party has sixty days in which to file a responsive pleading if that party has timely waived service under Fed. R. Civ. P (d). Counsel for GLA Collections notes that on June 16, 2008, he filed a waiver of service [Record No. 21, entered

16

6/17/08]. Counsel argues that in light of that waiver, and the filing of an electronic answer to the "Second Amended Complaint" on August 7, 2008, no possible default could have occurred.

## DISCUSSION
### 1. Standard for Motions to Dismiss
### and Motions for Summary Judgment

Federal Rule of Civil Procedure 12(b)(6) provides for a defendant to move for dismissal for a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, a court will take well pled allegations as true and construe them most favorably toward the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims, if the alleged facts are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976).

Rule 12(b)(6) continues, in pertinent part, as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*Id*. Thus, the plain language of the rule requires that if the Rule 12(b)(6) motion has attachments which the Court considers, such as the declarations herein, then the motion "shall" be converted into a motion for summary judgment pursuant to Rule 56. *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993).

Here, the Court has considered the sworn affidavits filed by the parties. Accordingly, the

17

Court must also examine the standards for summary judgment. Summary judgment should be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007). The evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* 522 U.S. 967 (1997).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

The moving party has the burden of showing there is an absence of evidence to support a claim. *Celotex*, 477 U.S. at 324-25. After the moving party carries its burden, the non-moving party must go beyond the pleadings to designate by affidavits, depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue of material fact for trial. *Id.* If the non-moving party completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Id.* at 322-23.

A district court is required to examine a motion for summary judgment to ensure that a

moving party has discharged his burden. *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). With these standards in mind, the Court turns its attention to the defendants' and the plaintiff's motions to dismiss and/or for summary judgment.

### 2. Motion to Dismiss Filed by Defendants CBSI and GLA Collections under FDCPA

As noted by the defendants, 15 U.S.C. § 1692g requires that a debt collector must provide a consumer with specific information regarding the debt within five days after the initial communication, unless that information is contained in the initial communication. A collector's initial letter to a consumer must contain specific data: (a) the amount of the debt, (b) the name of the creditor, (c) the time allowed to dispute the debt, (d) the creditor's willingness to verify the debt to the collector if the consumer disputes it, and (e) the creditor's willingness to furnish the name and address of the original creditor at the debtor's request.

Defendant CBSI has submitted a sworn statement from Sheila Renfro, its authorized representative, which states that CBSI sent its initial communication to Campbell on January 12, 2006. According to Ms. Renfro, that initial communication contained the five validation notice requirements set forth in 5 U.S.C. § 1692g. Ms. Renfro further asserts in her Affidavit that Campbell did not dispute the validity of the underlying debt within the thirty-day period specified in § 1692g(b). She states that CBSI received Campbell's letter seeking debt validation information, a demand to cease collection efforts, over two years later, on February 19, 2008.

In his Response to CBSI's motion, Plaintiff Campbell does not dispute Renfro's sworn statement that the initial communication was *sent* on January 12, 2006. He alleges only that he did not *receive* CBSI's initial communication of January 12, 2006 because he was being

transferred on that same date from the custody of a Kentucky county jail (the Carter County Detention Center) to a federal facility in Oklahoma. Campbell contends that any mail sent to him at the Carter County Detention Center would have been returned to CBSI with a notation that he was no longer confined at that jail, thus putting CBSI on notice that he did not receive the initial communication. Campbell instead argues that his February 19, 2008, letter to CBSI operated as a *de facto* "initial communication" to which CBSI failed to timely respond.

Defendant GLA Collections has submitted a sworn statement from Janean Fritch, its authorized representative, which states that GLA Collections sent its initial communication to Campbell on March 16, 2007. According to Ms. Fritch, that initial communication contained the five validation notice requirements set forth in 5 U.S.C. § 1692g. Ms. Fritch further asserts in her Affidavit that Campbell did not dispute the validity of the underlying debt within the thirty-day period specified in § 1692g(b). She states that over two years later, on February 19, 2008, GLA Collection received Campbell's letter seeking debt validation information and demanding cessation of collection efforts.

Just as he responded to CBSI's motion, Plaintiff Campbell does not dispute Fritch's sworn statement that GLA Collections' initial communication was *sent* on March 16, 2007. He alleges only that he did not *receive* GLA Collection's communication of March 16, 2007, because by that date, he had already been transferred from the custody of the Carter County Detention Center to a federal facility in Oklahoma.

Campbell contends that any mail sent to him at the Carter County Detention Center would have, or should have, been returned to GLA Collections with a notation that he was no longer

confined there.  Campbell claims that had the Carter County Detention Center done this, GLA Collections would have been on notice that he had not received the initial communication. Just as he argued with respect to CBSI, Campbell argues that his letter February 19, 2008, letter to GLA Collections operates rated as a *de facto* "initial communication" to which GLA Collections failed to timely respond.

As CBSI and GLA Collections correctly point out, the case of *Mahon v. Credit Bureau of Placer County Inc*., 171 F.3d 1197 (9th Cir. 1999), establishes that a debt collector's only obligation is to *send* the validation notice within five days of the initial communication. *Mahon* expressly holds that under § 1692g(a), a debt collector is not required to establish actual receipt by the debtor. *Id*. at 1201 ("The plain language of section 1692g(a) does not require that a Validation of Debt Notice must be received by a debtor. Instead, the plain language states that such a Notice need only be sent to a debtor."). *See also Zamos v. Asset Acceptance, LLC*., 423 F. Supp.2d 777, 786 (N.D. Ohio, 2006); *McNally v. Client Services, Inc.*, 2007 WL 4561152, 4 (W. D. Pa., 2007) ("Therefore, receipt of the notice of debt, as a matter of law, is not required.")

Campbell attempts to distinguish the *Mahon* case but cites no impressive legal authority for the proposition that *receipt* by the consumer of initial communication from a debt collector is required. Given the *Mahon* case, and its progeny, the Court would be substantially inclined to grant the defendants' motions to dismiss and/or for summary judgment, and deny Campbell's motions for summary judgment. One case, however, gives the Court pause.

The case of *Johnson v. Midland Credit*, 2006 WL 2473004 at *12-13 (N. D. Ohio, 2006) discusses the "no proof of receipt required" rule, but qualifies that rule by stating that the concept

of delivery is a rebuttable presumption. The court held that the debtor had stated a claim where the record was clear that the notice of the debt was sent to the wrong address and was returned by the postal service to the debt collector as "undeliverable."

Campbell alleges that because of his transient custodial status on January 12, 2006, he could not have received either of the defendants' initial communications. To that extent, the case is somewhat factually similar to the *Johnson* case. The *Johnson* case explains:

> If debt collectors could satisfy the FDCPA by merely sending validation notices to any address, valid or invalid, it would not serve to inform debtors of their rights, and would constitute an "abusive debt collection practice." 15 U.S.C. § 1692(e).  Section 1692g exists to inform debtors of their right to dispute a debt and to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Van Westrienen*, 94 F. Supp.2d at 1096 (internal quotations omitted). If debt collectors were not obligated to send a follow-up validation notice after the first was returned as undeliverable, it would defeat the purpose of § 1692g, because debtors would have no notice of their right to dispute a debt. This is contrary to both the purpose and plain meaning of the FDCPA.

> This conclusion is entirely consistent with *Mahon*, *Zamos II*, and *Van Westrienen*. (Cites omitted). As the *Mahon* court noted, when a debt collector sends a validation notice, there is a presumption of delivery. Absent evidence to rebut the presumption, a debt collector has satisfied the notice requirements of the FDCPA. However, where the debtor rebuts the presumption of delivery by showing the notice was sent to an incorrect address and returned as undeliverable, the plain language and purpose of the FDCPA requires additional action by the debt collector to send a notice reasonably calculated to reach the consumer. **This additional obligation only applies when the debt collector is aware the first notice was not delivered, e.g., when the actual notice is returned to the debt collector by the Post Office. The obligation does not apply where the actual notice is forwarded on, and the debt collector gets a postcard notice of a new address. Moreover, as in *Mahon*, *Zamos II*, and *Van Westrienen*, it does not apply where the Post Office does not return the notice, even if the debtor asserts he did not receive notice**.

*Johnson*, WL 2473004, at *12 -13 [Bold Emphasis Added].

22

The record is clear that Campbell did not respond to either defendants' initial communication within the thirty-day period provided in the statute. The issue is whether Campbell has sufficiently rebutted the presumption that he received either initial communication because of his custodial status. Campbell asserts facts which indicate that Campbell might not have received the defendants' initial notices.

While Defendant GLA Collections argues that its March 16, 2007 initial communication was sent to Campbell's last known address, *Fritch's affidavit* does not state that fact. It mentions nothing on the subject of Campbell's address or whether the mailing was or was not returned in the mail as "undeliverable." Sheila Renfro's affidavit is equally silent on the same issue.

The record is incomplete as to whether either or both initial communications were returned in the mail to either or both defendants. The record requires further development from the defendants on the issue of whether they received any notification from the postal service as to a forwarding address for the plaintiff, or an indication from the postal service or federal or state authorities as to the status of the delivery of their initial communications. Resolution of that issue will be persuasive in addressing the FDCPA claims asserted in this action.

The plaintiff is advised in advance that a debt collector is under no legal obligation to cease and desist with collection efforts if the debtor fails to dispute the debt within validation period. *See Ditty v. CheckRite, Ltd., Inc.*, 973 F. Supp. 1320, 1329 (D. Utah 1997);[7] *See also*

---

[7]

 In *Ditty*, the plaintiffs wrote bad checks for retail purchases in amounts ranging from $2.85 to $46.68. The checks were referred by various merchants to CheckRite for collection. CheckRite sent two collection letters to plaintiffs and subsequently relinquished collection efforts to DeLoney & Associates, the law firm representing CheckRite. DeLoney & Associates sent a third letter, which informed each plaintiff that their dishonored check had been referred by CheckRite for litigation.  The letter stated the

*Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999).[8]  The *Ditty* case may assist the Court

regarding the defendants' compliance with the FDCPA, depending on what the defendants file

concerning what they knew, or may have known, about the plaintiff's address after sending their

respective initial communications.

    At this time, the Court will deny without prejudice the motions to dismiss/motion for

---

terms of an acceptable settlement and warned of a potential civil action for the amount of the check and
stated that other actions, "including fraud in the inducement" would be considered.

    More than thirty days passed between the time CheckRite sent its initial letter and the time
DeLoney & Associates sent its letter. The plaintiffs (the Dittys) argued that the collection letter sent by
DeLoney & Associates to the Dittys violated § 1692g because the validation notice, which appeared on
the reverse side of the letter, was "overshadowed" by language on the letter's front side. The court
disagreed with the Dittys, noting that their argument ignored the fact that the letter, dated March 6, 1995,
was not the "initial communication" made to them. The court determined that the "initial
communication" with the Dittys was CheckRite's January 19, 1995 letter. The court concluded the
Dittys' right to dispute the validity of the debt expired before the law firms' letter was sent, stating:

> "Section 1692g does not require another debt collector, undertaking collection efforts
> after a validation notice has been timely sent, to provide additional notice and another
> thirty-day validation period. More than thirty days passed between the time CheckRite
> sent its initial letter and the time DeLoney & Associates sent its letter. Therefore, the
> Dittys' right to dispute the validity of the debt expired before the DeLoney & Associates
> letter was sent. **The validation language contained therein was gratuitous and did
> not violate § 1692g.**

*Ditty*, 973 F. Supp. at 1329 [Bold emphasis added].

[8]

*Chaudhry* states as follows:

    Contrary to Appellants' contention, verification of a debt involves nothing more than the
debt collector confirming in writing that the amount being demanded is what the creditor
is claiming is owed; the debt collector is not required to keep detailed files of the alleged
debt. . . . Consistent with the legislative history, verification is only intended to
"eliminate the ... problem of debt collectors dunning the wrong person or attempting to
collect debts which the consumer has already paid. . . ." There is no concomitant
obligation to forward copies of bills or other detailed evidence of the debt.

*Chaudhry*, 174 F.3d at 406.

summary judgment filed by Defendants CBSI and GLA Collections on the FDCPA claims [Record Nos. 26 and 41]. For the same reason, the Court will also deny Plaintiff's Campbell's two motions for summary judgment [Record Nos. 28 and 39]. Remaining issues pertaining to the validity of the plaintiff's claims under the FDCPA, and his claims against the third defendant, Professional Collections, will be referred to the Magistrate Judge J. Gregory Wehrman for all further resolution, including the defendants' requests for attorneys fees.

### 3. "Motion to Dismiss" Filed by Defendants CBSI and GLA Collections regarding FCRA claims

The Court will grant the defendants' "Motion to Dismiss" as to construed claims asserted under the the FCRA, 15 U.S.C. § 1681. First, as the defendants correctly point out, Campbell did not assert a claim under the FCRA claim in his original complaint or in his construed second amended complaint.

Second, as the defendants note, medical provider Kings Daughters is not a defendant to this action. Third, the defendants have cited the numerous cases which support their claim that under 15 U.S.C. § 1681s-2(d), Plaintiff Campbell has no standing to assert a private right of action for an alleged violation of the 15 U.S.C. § 1681s-2(a) because such a right of action is vested only with federal and state officials.[9] Based on these cases, the Court finds that Campbell has not asserted a valid claim against either defendants under the FCRA

---

[9]

*See*, *e.g.*, *Betts v. Equifax Credit Info. Servs., Inc.*, 245 F.Supp.2d 1130, 1134 (W.D. Wash. 2003); *Aklagi v. Nationscredit Financial Services Corp.*, 196 F.Supp.2d 1186, 1192 (D. Kan. 2002); *Hasvold v. First USA Bank*, 194 F.Supp. 2d 1228, 1231 (D. Wyo. 2002); *Riley v. Gen. Motors Acceptance Corp.*, 226 F.Supp.2d 1316, 1320 (S.D. Ala. 2002); *Vazquez-Garcia v. Trans Union De Puerto Rico*, 222 F.Supp.2d 150, 157 (D.P.R. 2002).

As the Supreme Court dictated in *Celotex*, summary judgment is justified "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. at 322. Summary Judgment, in favor of the defendants, on the FCRA claims, is warranted.

### 4. Campbell's "Motion for Default Judgment"[Record No. 45]

Plaintiff Campbell's  "Motion for Default Judgment"will be denied. Defendant GLA Collections did not default in any respect.  GLA Collections correctly asserts that pursuant to the provisions of Fed. R. Civ. P. 12 (a)(1)(A) (ii), it had sixty (not twenty) days from the date of service of process in which to file an Answer to the Second Amended Complaint.

On June 16, 2008, counsel for GLA Collections filed a waiver of service as is allowed under Fed. R. Civ. P. 4(d) [*See* Record No. 21, entered 6/17/08]. That waiver afforded GLA Collections forty (40) additional days in which to respond to the "Second Amended Complaint" [Record No. 9]. On August 7, 2008, GLA Collections filed an electronic Answer to the "Second Amended Complaint" [*See* Record No. 35].  Thus, GLA Collections did not default.

### 5. Claims Against Professional Collections

In the Order entered on June 17, 2008, the Court explained to Campbell that  it was **his** responsibility to provide the Court with sufficient information to permit the USM to serve Defendant Professional Collections, citing *Byrd v. Stone*, 94 F.3d 217 (6th Cir. 1997) [*See* Record No. 22]. Campbell has not provided an adequate address for this defendant. Fed. R. Civ. P. 4 (m) requires that service of summons be effectuated within 120 days after the complaint is

26

filed. Even after entry of the June 17, 2008 Order, Professional Collections has not been served and good cause has not been demonstrated for the failure. The claims against this defendant will therefore be dismissed with prejudice.

CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)       The "Motions to Dismiss/Motion for Summary Judgment" filed by Defendants Defendant Credit Bureau Systems, Inc., [Record No. 26] and Defendant GLA Collections Company, Inc. [Record No. 41] are **PARTIALLY GRANTED** and **PARTIALLY DENIED** as follows:

(A)       The Court will **DENY WITHOUT PREJUDICE** the defendants' "Motions to Dismiss/ Summary Judgment" on the claims asserted by the Plaintiff under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

(C)       The Court will **GRANT** the defendants' "Motions to Dismiss/ for Summary Judgment" on the claims asserted by the Plaintiff under the Fair Credit Reporting Act, (the FCRA), 15 U.S.C. § 1681.

(2)       The **First** "Motion for Summary Judgment" [Record No. 28] filed by Plaintiff Freddy S. Campbell is **DENIED** without prejudice.

(3)       The **Second** "Motion for Summary Judgment" [Record No. 39] filed by Plaintiff Freddy S. Campbell is **DENIED** without prejudice.

(4)       The "Motion for Default Judgment Against Defendant GLA Collections" filed by Plaintiff Freddy S. Campbell [Record No. 45] is **DENIED WITH PREJUDICE**.

27

(5)     The claims against Defendant Professional Collections are **DISMISSED**

**WITH PREJUDICE**.

(6)     This proceeding, 5:08-CV-177-KSF, is referred to Magistrate Judge J.

Gregory Wehrman pursuant to 28 U.S.C. § 636(b)(1)(A) for all further proceedings, including

the defendants' requests for attorneys fees. This proceeding is no longer referred to the Pro Se

Office. The Clerk of the Court is directed to make the appropriate administrative referral

notation(s) in the CM/ECF docket sheet.

This 27th day of January, 2009.

**Signed By:**

**_Karl S. Forester_**  $K S F$

**United States Senior Judge**